**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WILLIAM HARRIS, et al.,

               Plaintiffs,

v.                                  CIVIL ACTION NO.  2:18-cv-00558

EQUIFAX INFORMATION SERVICES, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Compel Arbitration and Dismiss Action.[1] (ECF No. 20.) For the reasons discussed herein, the Court **GRANTS** the motion.[2] (ECF No. 20.)

### I.     BACKGROUND

This action arises out of a dispute between Plaintiffs William and Judy Harris ("Plaintiffs") and their loan servicer, Wells Fargo, regarding the credit reporting on Plaintiffs' mortgage loan. (*See* ECF No. 1.) On March 17, 2003, William Harris signed a note in favor of Wells Fargo

---

[1] In their response to Wells Fargo's motion, Plaintiffs argue that the Court should construe Wells Fargo's motion as a motion for summary judgment, as the Court must consider filings outside of the pleadings. (*See* ECF No. 24 at 5–6.) However, Wells Fargo filed its motion only pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 et seq. (*See* ECF No. 20.) Thus, the Court will construe the motion solely as a motion to compel arbitration under the FAA and evaluate it under the FAA standard as discussed below. *See, e.g.*, *House v. Rent-A-Center Franchising Int'l, Inc.*, No. 3:16-cv-6654, 2016 WL 7394552, at *2 (S.D. W. Va. Dec. 21, 2016) (applying FAA standard for compelling arbitration where the defendant stated that it brought its motion pursuant to the FAA).

[2] Also pending before the Court is Plaintiffs' Motion to Lift Stay and Set New Scheduling Order. (ECF No. 53.) As this Memorandum Opinion and Order dismisses the case, the Court **DENIES AS MOOT** Plaintiffs' motion. (ECF No. 53.)

Financial West Virginia, Inc. ("Wells Fargo Financial WV"), secured by a deed of trust on their property for a mortgage loan. (*See* ECF No. 21 at 2.) On the same day, both Plaintiffs signed an arbitration agreement (the "Arbitration Agreement") with Wells Fargo Financial in which Plaintiffs agreed to arbitrate any claim, dispute, or controversy of any kind arising out of Plaintiffs' loan. (*See* ECF No. 20-1 at 13.) Plaintiffs' loan was eventually assigned to Wells Fargo d/b/a Wells Fargo Home Mortgage. (*See* ECF No. 1 at 2, ¶ 3; *see also* ECF No. 20 at 2.)

On June 10, 2013, Plaintiffs filed an action against Wells Fargo Financial and Wells Fargo in the Circuit Court of Wood County, West Virginia, alleging that their mortgage was void due to Wells Fargo's alleged fraudulent servicing of Plaintiffs' mortgage loan. (*See* ECF No. 1 at 2, ¶ 5.) Plaintiffs agreed to arbitrate the dispute pursuant to the Arbitration Agreement. (*See* ECF No. 20-2.) On October 17, 2016, Plaintiffs and Wells Fargo entered into a settlement agreement and release (the "Settlement Agreement") in which Wells Fargo agreed, in relevant part, to request deletion of Plaintiffs' credit line and/or any negative references on Plaintiffs' trade line with Wells Fargo. (*See* ECF No. 1 at 2, ¶¶ 6–7.) The Settlement Agreement also included two integrating clauses that state, in part, the following:

> Complete Agreement: This Agreement represents the complete agreement between the Settling Parties concerning the subject matter hereof, supersedes all prior or contemporaneous agreements, representations or negotiations, if any, and may not be modified, except by a writing signed by all Parties hereto.
> . . .
> Integration Clause: This Agreement contains the entire agreement between and among the Parties hereto, and supersedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this Agreement.

(ECF No. 24-1 at 4.)

2

On December 20, 2016, Wells Fargo advised Plaintiffs that it had requested the credit correction on November 18, 2016. (ECF No. 1 at 2, ¶ 8.) However, on or around March 2017, Plaintiffs sought a vehicle loan and were denied favorable rates and terms due to their trade line with Wells Fargo still reflecting incorrect credit information. (*See id.* at 3, ¶¶ 9–11.) Plaintiffs subsequently sent letters to Wells Fargo to notify them that their credit report was still incorrectly reporting that they were in arrears on their account with Wells Fargo. (*Id.* at ¶ 13.) Wells Fargo replied, asserting that the credit line and the negative reporting should have been removed. (*Id.* at ¶ 14.)

Plaintiffs also contacted TransUnion and Equifax Information Services, LLC ("Equifax") to inform them that Plaintiffs' mortgage account was being reported inaccurately. (*Id.* at ¶ 15.) TransUnion fixed the incorrect reporting; however, Equifax continued to report the incorrect mortgage information. (*See id.* at 3–4, ¶¶ 16–22.)

On April 12, 2018, Plaintiffs filed the present action against Equifax[3] and Wells Fargo asserting claims of false credit reporting. (*See id.* at 5–11.) Most relevant here, Plaintiffs alleged a count for breach of contract and three counts for violations of the Fair Credit Reporting Act against Wells Fargo for Wells Fargo's alleged breach of the Settlement Agreement and false credit reporting. (*See id.* at 5–8.)

On October 16, 2018, Wells Fargo filed the present motion to compel arbitration. (ECF No. 20.) Plaintiffs timely responded to the motion, (ECF No. 24), and Wells Fargo timely replied, (ECF No. 27). As such, the motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

---

[3] Plaintiffs reached a settlement with Equifax in mediation, (ECF No. 48), and thus, Equifax is no longer a defendant to this action. (ECF No. 51.)

The Federal Arbitration Act ("FAA") was in enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them on] the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). It provides that arbitration clauses in contracts concerning interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.* (citing *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)).

Under section 4 of the FAA, "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.' The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Center West, Inc., v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). A party seeking to compel arbitration pursuant to this section must establish the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)) (internal quotation marks omitted).

### III.    DISCUSSION

In support of its motion, Wells Fargo argues the following: (1) Plaintiffs entered into a binding arbitration agreement with Wells Fargo in which they agreed to arbitrate any claims regarding Plaintiffs' mortgage, including any future dealings, that must be enforced under the FAA; and (2) the Arbitration Agreement contains a "delegation clause" which requires the arbitrator, not the Court, to decide gateway questions of arbitrability, such as whether the Arbitration Agreement is enforceable. (*See* ECF No. 21 at 2, 8–9.)

As stated above, there are four factors a party must demonstrate for the Court to compel arbitration under the FAA. *See supra* Part II. Plaintiffs contest the second factor[4]—whether there is a binding arbitration agreement that covers the dispute—by arguing first, that the Arbitration Agreement is no longer enforceable as it was superseded by the subsequent Settlement Agreement and second, that Wells Fargo has not shown it was an intended party to the Arbitration Agreement. (*See* ECF No. 24 at 6–14.)

The Fourth Circuit has stated that "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)) (internal quotation marks omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation," *id.* at 501 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), and "a court will presume that it, rather than an arbitrator, will decide any disputes

---

[4] As to the first and fourth factors, the filing of this lawsuit evidences that there is a dispute between the parties and that there is a refusal on behalf of one of the parties to arbitrate. *See, e.g., May v. Nationstar Mortg.*, LLC, No. 3:12-cv-43, 2012 WL 3028467, at *8 (N.D. W. Va. July 25, 2012). As to the third factor—whether the transaction is related to interstate commerce—the dispute involves citizens of different states as Plaintiffs are West Virginia residents and Wells Fargo is a South Dakota resident. (*See* ECF No. 6.) *See also id.*

regarding arbitrability, such as 'whether the parties are bound by a given arbitration clause.'" *Kabba v. Rent-A-Center, Inc.*, 730 F. App'x 141, 142 (4th Cir. 2018).

However, parties can agree to arbitrate these "gateway" questions of arbitrability through a delegation clause. *See Carson v. Giant Foods, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999); *see also Rent-A-Center*, 561 U.S. at 68–69. This agreement is treated as a severable, additional agreement that is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by . . . compelling arbitration under § 4." *See Rent-A-Center*, 561 U.S. at 70 (quoting 9 U.S.C. § 2); *see also Schumacher Homes of Circleville, Inc. v. Spencer*, 787 S.E.2d 650, 660 (W. Va. 2016) ("Succinctly, a delegation clause is 'a distinct mini-arbitration agreement divisible from the contract in which it resides—which just so happens also to be an arbitration agreement.'" (quoting *Rent-A-Center*, 561 U.S. at 85)). This clause must contain "'clear and unmistakable' language showing that the parties intended "to delegate disputes regarding arbitrability to the arbitrator." *Novic v. Credit One Bank, N.A.*, No. 17-cv-2168, 2019 WL 103878, at *2 (4th Cir. Jan. 4, 2019).

Nevertheless, a party may oppose a motion to compel arbitration by challenging the validity of the delegation provision. *See Novic*, 2019 WL 103878, at *3. Where a party challenges the validity of the delegation provision, a court must first determine whether the delegation clause is enforceable before compelling arbitration. *See Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 455 (4th Cir. 2017) (citing *Rent-A-Center*, 561 U.S. at 71). This challenge must be to the delegation provision specifically and not the arbitration agreement as a whole. *See Minnieland*, 867 F.3d at 455. Thus, a court must first decide whether the plaintiff challenged the delegation provision specifically and, if so,

whether the delegation provision is unenforceable "upon such grounds as exist at law or in equity." *See Spencer*, 787 S.E.2d at 661 ("The take-away rule from *Rent-A-Center* is this: under the FAA and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court must first consider a challenge, under general principles of state law applicable to all contracts, that is directed at the validity, revocability or enforceability of the delegation provision itself.").

Here, the delegation clause unmistakably delegates the question of whether the arbitration clause is valid to the arbitrator by providing, in relevant part, the following:

> Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract tort or otherwise) arising out of or relating to your Loan Agreement, or any prior or future dealings between us resolved by binding arbitration. . . . A Claim may include, but shall not be limited to, the issue of whether any particular Claim must be submitted to arbitration, or the facts and circumstances involved with your signing of this Agreement or your willingness to abide by the terms of this Agreement or the validity of this Agreement.

(ECF No. 20-1 at 13.) *See also Novic*, 2019 WL 103878, at *3 (finding that a similar delegation clause unambiguously required arbitration of challenges to the enforceability of the arbitration provision). The Arbitration Agreement further incorporates the rules of the American Arbitration Association ("AAA"). (*See id.*) Courts in this District have found that reference to the AAA rules buttresses a finding that the threshold questions of arbitrability are to be decided by the arbitrator. *See, e.g.*, *Reed v. Darden Rests., Inc.*, 213 F. Supp. 3d 813, 819 (S.D. W. Va. 2016) ("The referral to the AAA rules asserts this delegation as well . . . ."); *House v. Rent-A-Center*

*Franchising Int'l, Inc.*, No. 3:16-cv-6654, 2016 WL 7394552, at *6 (S.D. W. Va. Dec. 21, 2016) ("If agreements incorporating by reference the rules of the American Arbitration Association (AAA), which in turn references a delegation provision, have been upheld by courts, surely a concise statement within the agreement itself satisfies the clear and unmistakable test.").

Wells Fargo explicitly raised the issue of the delegation clause in its motion. However, in their response, Plaintiffs were fairly nonresponsive to that issue. The only mention of the delegation clause in Plaintiffs' response appears in Plaintiffs' discussion regarding applicable law. (*See* ECF No. 24 at 4 (stating that the Court must decide when there is a question as to the existence of the arbitration agreement, including the delegation clause).) In arguing that the Arbitration Agreement should not be enforced[5], Plaintiffs focus on the Arbitration Agreement as a whole being superseded by the Settlement Agreement. (*See id.* at 6–10.) Plaintiffs do not argue that the Settlement Agreement precludes the Parties from arbitrating whether the Arbitration Agreement is enforceable. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 74 ("To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. . . . Jackson, however, did not make any arguments specific to the delegation provision; he argued that . . . discovery procedures rendered the entire Agreement invalid.").

Plaintiffs' other arguments regarding the enforceability of the Arbitration Agreement are also not directed at the delegation provision. (*See id.* at 10–14 (arguing that Wells Fargo was not

---

[5] Plaintiffs attempt to characterize their argument as challenging the existence of the Arbitration Agreement. However, Plaintiffs admitted that the Arbitration Agreement existed in the previous action that precipitated the Settlement Agreement. (*See* ECF No. 20-2.) Thus, the challenge is not whether the Arbitration Agreement exists, but whether it is still valid in light of the Settlement Agreement. *See, e.g.*, *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 204 (5th Cir. 2016) ("[Plaintiff] makes a variety of contract-interpretation arguments designed to show that the arbitration agreement does not apply retroactively to claims filed before it went into effect. But those are precisely the sort of issues that, in the presence of a valid delegation clause, we cannot resolve.").

an intended party to the Arbitration Agreement and that Wells Fargo waived its right to arbitrate).)
*See also Novic*, 2019 WL 103878, at *3 (finding that the plaintiff failed to challenge the delegation clause when the plaintiff argued that the defendant had assigned its right to compel arbitration when it assigned plaintiff's account to a third party and when the defendant participated in the collection action). As Plaintiffs' arguments do not specifically challenge the delegation provision, it is for the arbitrator, not the Court, to decide whether the Arbitration Agreement is valid in light of the Settlement Agreement. *See Minnieland*, 867 F.3d at 455.

Further, to the extent that Plaintiffs argue that their claims are not covered by the Arbitration Agreement, that is also for the arbitrator to decide as the delegation provision provides that "[a] claim may include, but shall not be limited to, the issue of whether any particular Claim must be submitted to arbitration." (*See* ECF No. 20-1 at 13.) *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

Having found that the issues presented in this action are subject to arbitration, dismissal of this action is proper. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *see also Daniels v. Diamond Resorts Fin. Servs., Inc.*, No. 2:18-cv-00561, 2019 WL 1245800, at *8 (S.D. W. Va. Mar. 18, 2019) ("In this case, because the sole claim brought

jointly by both plaintiffs is subject to arbitration, and would properly be referred there, dismissal is warranted in lieu of a stay.").

## IV. CONCLUSION

For the reasons discussed more fully above, the Court **GRANTS** Wells Fargo's Motion to Compel Arbitration and Dismiss Action and **DISMISSES WITHOUT PREJUDICE** this action. (ECF No. 20.)  The Court further **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 17, 2019

THOMAS E. JOHNSTON, CHIEF JUDGE